IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 17, 2018

**STATE OF TENNESSEE v. JOSH ANDREW DANOFF**

**Appeal from the Circuit Court for Montgomery County**
**No. CC14-CR-1146      Jill Bartee Ayers, Judge**

_____

**No. M2017-00506-CCA-R3-CD**

_____

Defendant, Josh A. Danoff, was indicted by the Montgomery County Grand Jury for contributing to the delinquency of a minor, aggravated statutory rape, and three counts of rape based upon alternative theories of the same offense. Upon motion of the State, the trial court dismissed one count of rape prior to trial. Defendant was convicted by a jury of the remaining counts as charged. The trial court sentenced Defendant to serve three years for his aggravated statutory rape conviction, eight years for each rape conviction, and 11 months and 29 days for his contributing to the delinquency of a minor. The trial court merged the rape convictions and aggravated statutory rape conviction into one conviction of rape and ordered Defendant's sentences to be served concurrently, for a total effective sentence of eight years. In this appeal as of right, Defendant contends that the evidence was insufficient to sustain his convictions; that the trial court committed plain error by allowing hearsay testimony; and that the trial court erred by failing to grant probation or split confinement. Having reviewed the entire record and the briefs of the parties, we find no error and affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and TIMOTHY L. EASTER, JJ., joined.

Roger E. Nell, District Public Defender (on appeal); Jeffry S. Grimes, Clarksville, Tennessee (at trial) for the appellant, Josh Andrew Danoff.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and Kimberly Lund, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Facts*

The victim will be identified by her initials, V.H. She testified that Defendant was her mother's ex-boyfriend, but Defendant resided with V.H., her mother, and her siblings. On May 26, 2012, V.H. and Defendant were home alone. V.H. was 14 years old at the time. She testified that they watched a movie, and she folded laundry. Defendant offered V.H. a mixed drink of "Jack and [C]oke." V.H. accepted it, and Defendant made another drink for himself. V.H. testified that it tasted "gross," but she continued to drink it because she "felt cool." V.H. finished the drink, and Defendant offered her another one. She was hesitant to accept, "because I already drank you know, one already and then at this point, I am going to get in trouble with my [m]om if she finds out and it was really nasty, so I don't want another one." Defendant told V.H. that he would "put more [C]oke so [she] didn't taste [the alcohol] as much" in the second drink. V.H. testified that she consumed two mixed drinks that Defendant made for her. She testified, "I felt a little bit woozy, but I wasn't like drunk." V.H. testified that Defendant offered her a shot of liquor, and she accepted. Defendant persuaded V.H. to drink another shot. She testified, "I was like no, I am not doing another one. That was terrible, but he was like oh, come on, you can do it, and then he just kept egging me on and so I took another one."

V.H. began to feel ill. She crawled to the bathroom and vomited. Defendant stood over her and rubbed her back while she vomited. Defendant then walked her to the kitchen and offered her another shot of alcohol. Defendant told her that she needed "to catch up" to him because he had taken more shots than she had. V.H. took another shot. She testified that she felt sick and leaned over the kitchen counter. Defendant stood behind her and rubbed her back. V.H. told him that she wanted to go to sleep, and she began to walk away. Defendant then turned her around and sat her on the counter in front of him. V.H. hit her head on the cabinet. She got down and crawled to her bedroom. Defendant followed her. When she got to the top of the stairs, she laid on her back, and Defendant "got in between [her] legs and then he took off [her] pants and [her] bra." V.H. crawled to her bedroom and laid in her bed. She testified that she "could not walk" because she was intoxicated. Defendant again followed her, and he forcefully turned her onto her back and straddled her body. V.H. testified that she was scared. Defendant removed her underwear and touched her vagina. Defendant sexual penetrated V.H.'s vagina with his penis. Defendant then ejaculated on V.H.'s side. V.H. testified that she resisted Defendant by "trying to keep [her]self on [her] side" and that she told him "no." She described the way Defendant rolled her onto her back as "harsh and aggressive." She testified, "[t]here is no way that I said anything to make [Defendant] think that I wanted to do that."

The following morning, V.H. woke up with a "horrible headache" and body aches. She took a shower and noticed blood while "cleaning [her] girl area." V.H. told Defendant that she did not remember anything from the night before, although she remembered having been raped by Defendant. V.H. put the clothes she was wearing the previous night in a drawer in the bathroom "so [she] would have it for later." She went to an emergency room that night.

V.H. told the nurse who examined her, Denise Lyons, that she had been given shots of alcohol by her mother's ex-boyfriend and that he raped her. She indicated that the sex was not consensual. A medical examination revealed injuries to V.H.'s genitals, including tenderness and a laceration. Ms. Lyons testified, "you can have injury after consensual sex and those kinds of things, but normally women do not seek emergency care for those kinds of injuries." She testified that V.H.'s injuries were consistent with her description of what happened.

Detective Howard Gillespie, of the Clarksville Police Department, investigated the case. He collected the sexual assault kit at the hospital and submitted it to the Tennessee Bureau of Investigation ("TBI") for DNA analysis, which revealed the presence of Defendant's semen on V.H.'s underwear.

Defendant testified at trial. Defendant acknowledged that he gave V.H. mixed drinks and shots of liquor on the night of May 26, 2012. He testified that after V.H. took her "fourth or fifth shot," she ran to the bathroom and got sick. Defendant rubbed her back in the bathroom and again in the kitchen. Defendant denied that he touched V.H. in a sexual manner or that he had sex with her in her bed. He testified that he walked with V.H. upstairs to her bedroom. She did not fall, and he did not remove her clothes. He testified that he "[l]aid her down on the bed" and sat on the edge of her bed "for just a second, a minute or two . . . kind of just B.S.-ing." Defendant testified that V.H. said that she wanted another shot and got up to run downstairs. Defendant grabbed her, and V.H. fell at the top landing of the stairs. Defendant told her that she could not have any more alcohol. Defendant carried V.H. "like a sack of potatoes" to her bed. He testified that V.H. hit her head on the nightstand. Defendant then went downstairs and slept on the couch. He testified that he "woke up to the sensation of somebody on top of [him]." Initially, he thought it was V.H.'s mother, "because she had done it before; come home drunk, initiated some sex with [him], not a big deal." He then realized that it was V.H., and he "freaked out." He "tossed [her] off to the side," and began to scream at her. Defendant testified that he did not ejaculate, and he speculated that the semen found on V.H.'s underwear might have been "pre-cum."

Defendant also presented testimony from Detective Gillespie, who testified that he collected the bed linens from V.H.'s bedroom and requested DNA testing by the TBI.

Detective Gillespie testified that the TBI did not test the sheets, per their policy, after they found Defendant's semen in V.H.'s underwear.

*Analysis*

*Sufficiency of the evidence*

Defendant contends that the evidence was insufficient to sustain his convictions for aggravated statutory rape and rape. Defendant was indicted in Count 2 for aggravated statutory rape, in Count 4 for rape based on the victim's lack of consent, and in Count 5 for rape by force or coercion. The trial court merged Counts 2 and 5 into Count 4, rape based on the victim's lack of consent.

Defendant primarily challenges the standard of review of sufficiency of the evidence, which is well-settled. In determining the sufficiency of the evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). The State is "afforded the strongest legitimate view of the evidence and all reasonable inferences" from that evidence. *Vasques*, 221 S.W.3d at 521. The appellate courts do not "reweigh or reevaluate the evidence," and questions regarding "the credibility of witnesses [and] the weight and value to be given the evidence . . . are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984).

"A crime may be established by direct evidence, circumstantial evidence, or a combination of the two." *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998); *see also State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

As applicable in this case, rape is the "unlawful sexual penetration of a victim by the defendant," if either the "sexual penetration is accomplished without the consent of the victim and the defendant knows or has reason to know at the time of the penetration that the victim did not consent," or if "force or coercion is used to accomplish the act." T.C.A. § 39-13-503(a)(1), (2). The term "sexual penetration" means "sexual intercourse . . . or any other intrusion, however slight, of any part of aa person's body . . . into the genital or anal openings of the victim's . . . body." *Id.* § 39-13-501(7). Aggravated statutory rape is "the unlawful sexual penetration of a victim by the defendant, or of the

- 4 -

defendant by the victim when the victim is at least 13 but less than 18 years of age and the defendant is at least 10 years older than the victim." *Id*. § 39-13-506(c).

Defendant asserts that the proof did not establish that he "acted" and that "[i]t does not suffice" to sustain a conviction when the evidence shows that the "defendant was the one who was acted upon." In other words, Defendant contends that the State failed to establish that the sexual contact was not consensual, and Defendant asserts that the victim was not credible.

Viewing the evidence in the light most favorable to the State, the record reflects that Defendant forcefully turned V.H. onto her back. She attempted to resist by rolling back onto her side, and she told Defendant "no." Defendant sexually penetrated V.H. A medical examination showed injury to V.H.'s vagina, and DNA testing revealed Defendant's semen in her underwear.

The Tennessee Supreme Court has held that "it has long been the rule in our state that the uncorroborated testimony of a minor victim may be sufficient to sustain a conviction for forcible or coercive sex offenses such as simple rape." *State v. Collier*, 411 S.W.3d 886, 899 (Tenn. 2013). Moreover, this court has held that "a showing of lack of consent by the victim is sufficient to sustain a rape conviction," and that "[n]on-resistance is not consent." *State v. Wade Henry Allen Marsh*, No. E1998-00057-CCA-R3-CD, 2000 WL 555231, at *3 (Tenn. Crim. App. May 8, 2000). Additionally, "[t]he issue of consent is a question for the jury." *Id*. (citing *Haynes v. State*, 540 S.W.2d 277, 278 (Tenn. Crim. App. 1976)). The evidence is sufficient to support Defendant's conviction for rape. Defendant is not entitled to relief on this issue.

*Hearsay*

Defendant contends that the trial court committed plain error by allowing hearsay testimony. Defendant contends that the trial court erred by allowing the nurse, Denise Lyons, to testify as to the statements V.H. made to her and allowing into evidence exhibits containing V.H.'s statements.

Defendant acknowledges that he did not object to the testimony at trial. Nevertheless, he contends that we should address his issues as plain error. Tennessee Rule of Appellate Procedure 36(b) provides that "[w]hen necessary to do substantial justice, [this] court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." *See also* Tenn. R. Evid. 103(d). We may only consider an issue as plain error when all five of the following factors are met:

a) the record must clearly establish what occurred in the trial court; b) a clear and unequivocal rule of law must have been breached; c) a substantial right of the accused must have been adversely affected; d) the accused did not waive the issue for tactical reasons; and e) consideration of the error is necessary to do substantial justice.

*State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994) (footnotes omitted); *see also State v. Smith*, 24 S.W.3d 274, 283 (Tenn. 2000) (adopting the *Adkisson* test for determining plain error). Furthermore, the "plain error must be of such a great magnitude that it probably changed the outcome of the trial." *Adkisson*, 899 S.W.2d at 642 (internal quotation marks and citation omitted).

Initially, we note that the record clearly establishes what happened in the trial court. The State asserts that Defendant has not established that a clear and unequivocal rule of law was breached, that an objection was not waived for tactical reasons, or that consideration of the error is necessary to do substantial justice.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). As a general rule, hearsay is not admissible during a trial, unless the statement falls under one of the exceptions to the rule against hearsay. *See* Tenn. R. Evid. 802. Rule 803(4), Tennessee Rules of Evidence, provides an exception to the hearsay rule for "[statements] made for purposes of medical diagnosis and treatment describing medical history; past or present symptoms, pain, or sensations; or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." The Advisory Commission Comments for Rule 803(4) clarify that such statements "must be for both diagnosis and treatment." Our supreme court has explained that "if physicians or other medical personnel rely upon the statement in diagnosing and treating the patient, then the statement should be sufficiently trustworthy to be admissible in a court of law." *State v. McLeod*, 937 S.W.2d 867, 870 (Tenn. 1996).

Ms. Lyons testified that she was a board certified nurse practitioner and that she conducted sexual assault exams at the Blanchfield Army Community Hospital. She stated that she was also certified as a "Sexual Assault Nurse Examiner." She explained that a patient would normally be "medically cleared" in the ER to "make sure that there was no life, limb, or outside issues immediately there." The patient would then be taken to another area of the hospital for a forensic examination. Ms. Lyons testified that she spoke to V.H. in the ER, just as she does with every patient,

to ask what they were doing just before, during and after the event that brought them to the E.R. That helps me focus the exam. It also helps me – gives me some history so that I can look at potential differential diagnoses and then kind of get a plan of what I need to do, lab wise and then safety planning and those kinds of things.

Ms. Lyons documented V.H.'s history in her report. She then performed a "head-to-toe" forensic examination on V.H., which included a pelvic examination, hair samples, fingernail scrapings, and swabbings from V.H.'s mouth, vagina, and cervix and she also collected V.H.'s clothing.

Defendant argues that V.H.'s statements to Ms. Lyons were not made for the purposes of medical diagnosis and treatment because Ms. Lyons testified that V.H. was already "medically cleared" by the time the nurse saw her. We disagree. Ms. Lyons explained that a patient is "medically cleared" after it is determined through a medical examination that there are no injuries that require immediate medical attention. She also explained that she used the patient's history to determine the scope of the subsequent forensic examination.

We agree with the State that the hearsay evidence was admissible as statements made for the purpose of medical diagnosis and treatment. Accordingly, we conclude that Defendant has not shown that a clear and unequivocal rule of law has been breached. We need not address the remaining *Adkisson* factors.

*Sentencing*

Defendant contends that the trial court erred by denying a sentence of probation of split confinement. The State responds that the trial court acted within its discretion in sentencing Defendant to serve his sentence in confinement.

"[T]he abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). A trial court must consider the following when determining a defendant's specific sentence and the appropriate combination of sentencing alternatives: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in sections 40-35-113 and 40-35-114; (6) any statistical information provided by the administrative office of the

courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant wishes to make in the defendant's own behalf about sentencing. T.C.A. § 40-35-210(b)(1)-(7). In addition, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." *Id*. § 40-35-103(5). The court must impose a sentence "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." *Id*. § 40-35-103(2), (4).

A defendant is eligible for probation if the actual sentence imposed upon the defendant is ten years or less and the offense for which the defendant is sentenced is not specifically excluded by statute. T.C.A. § 40-35-303(a). When considering probation, the trial court should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, the defendant's present condition, including physical and mental condition, the deterrent effect on the defendant, and the best interests of the defendant and the public. *State v. Kendrick*, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999) (citing *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978)). "[A] trial court's decision to grant or deny probation will not be invalidated unless the trial court wholly departed from the relevant statutory considerations in reaching its determination." *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014).

Finally, in determining whether to deny alternative sentencing and impose a sentence of total confinement, the trial court must consider if:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

*Id*. §§ 40-35-103(1)(A)-(C); *see State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). In denying probation and imposing confinement, the trial court reasoned as follows:

[I]n looking at his physical and mental condition, and social history, certainly, [Defendant] has a lot of support from his family. I am concerned with a number of the responses in the psychosexual

evaluation; while he does have a low to moderate number on the recidivism there are a number of concerning responses, as pointed out by the State in that report.

As mentioned earlier, he has no prior criminal history. We've talked about the recidivism rate is low on that report. You get to looking at whether the interest[s] of society are protected from possible future conduct. Since there's no history with [Defendant] we don't know if other less restrictive measures would be unsuccessful.

We look at whether a sentence of probation would unduly depreciate the seriousness of the offense and provide a deterrent to others likely to commit a similar offense. And that's, really, where I have concerns with the situation in this case.

The victim impact statement, and she came in and testified as well, strong, as to the damage caused to the victim in this case. And the deterrent factor, also, for a crime of this nature, I don't find that probation is appropriate in this case and I am going to sentence [Defendant] to eight-years with the Department of Correction[ ].

Defendant argues that the trial court abused its discretion in ordering confinement because Defendant had no prior criminal history, and "[t]he trial court appeared to rely, in part, on the notion of general deterrence. Yet, there was no evidence presented to support the need for general deterrence." The State acknowledges that a trial court must make an additional finding that "deterrence is needed in the community," if the trial court denies probation based solely on that factor. *State v. Hooper*, 29 S.W.3d 1, 13 (Tenn. 2000). The State asserts, however, that the trial court also relied on a number of "concerning responses" in Defendant's psychosexual evaluation, the victim impact statement, and the victim's trial testimony. *See Sihapanya*, 516 S.W.3d at 476-77.

We conclude that the trial court did not abuse its discretion in denying a sentence of probation or split confinement. The record shows that the trial court properly considered the statutory criteria as well as other facts and circumstances supported by the record. Moreover, the trial court's determination is consistent with the purposes and principles of sentencing. Defendant is not entitled to relief on this issue.

CONCLUSION

Based on the foregoing, the judgments of the trial court are affirmed.


_____

THOMAS T. WOODALL, JUDGE